Filed 1/5/21  P. v. Diaz CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>SIMON LUA DIAZ,<br><br>Defendant and Appellant. | C091310<br><br>(Super. Ct. Nos. STKCRFE19860000270, 38223) |

Defendant Simon Lua Diaz challenges the trial court's denial of his petitions for resentencing under Penal Code[1] section 1170.95.  Defendant contends the court's summary denial was prejudicially erroneous because he fulfilled the statutory requirements by stating a prima facie case for relief thus entitling him to the appointment of counsel and briefing on his eligibility.  He further argues that if the superior court consulted the record in making its determination, that record was "materially inadequate"

---

[1]     Undesignated statutory references are to the Penal Code.

1

for purposes of deciding his eligibility. While acknowledging his jury was not instructed on aiding and abetting liability (indeed, defendant's trial counsel expressly declined an aider and abettor instruction), defendant nevertheless argues the entire trial transcript must be consulted "according to modern standards," and he should be afforded the opportunity to present new evidence.

Because defendant has not shown the trial court erred in determining he failed to state a prima facie case for relief, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

I

*Defendant's Convictions*

In 1987, a jury determined defendant, Simon Lua Diaz, was guilty of two counts of first degree murder with special allegations that defendant had committed multiple murders and that the murders were committed during the course of a burglary. The trial court sentenced defendant to two consecutive life terms without the possibility of parole and this court affirmed the judgment in an unpublished opinion.[2] (*People v. Lua* (Sept. 20, 1989, C002681) [nonpub. opn.] (*Lua*).) For our convenience, we herein recite relevant facts taken from this prior opinion in defendant's original appeal:

"A jury convicted defendant, a Spanish-speaking farm worker from Mexico, of the murders of an elderly couple, Al and Mary Borth. Family members found the Borths shot to death in their rural San Joaquin home. They each had been shot six times with a .22 caliber rifle. Among other items later found missing from the victim's home were Al

---

[2]     We will treat the People's request for judicial notice of this opinion as a request to incorporate it by reference and will grant that request. This opinion was part of defendant's record of conviction (*People v. Woodell* (1998) 17 Cal.4th 448, 456), which may be properly considered in the trial court's prima facie review (*People v. Lewis* (2020) 43 Cal.App.5th 1128, 1136, fn. 7, review granted Mar. 18, 2020, S260598 (*Lewis*); *People v. Verdugo* (2020) 44 Cal.App.5th 320, 333, review granted Mar. 18, 2020, S260493 (*Verdugo*)).

2

Borth's wallet, Mary Borth's purse, and two of Al Borth's guns -- a shotgun and a rifle. The rifle was an uncommon caliber, .22-250. The wallet and purse were later found in a local irrigation ditch along with other items from the Borth residence. These items included several ammunition boxes for the still missing guns.

"Shortly after the killings, defendant, employed in a field near the victims' house, told his foreman that he had a rifle and a shotgun for sale. He showed several people .22-250 caliber bullets which he said fit the rifle. One acquaintance obtained two of defendant's .22-250 bullets and turned them over to the sheriff. Another acquaintance, with defendant's permission, tossed several more bullets into a river. When later confronted by detectives about the bullets, defendant first denied having possessed them. He also denied that he had ever been in the victim's home.

"Sheriff's deputies arrested defendant after detectives found his fingerprints on the telephone in the victims' living room. After receiving Miranda warnings and learning about the fingerprints, defendant still denied having ever entered the Borth residence. . . ." (*Lua*, *supra*, C002681, pp. 2-3.)

"On March 5, 1987, after hearing evidence for seven days, the jury began deliberations. On March 11, 1987, the jury requested clarification of a legal matter. It sent the court a question, 'Can a person be found guilty of murder by indirect participation or assisting in the crime?' With the parties permission, the court asked the jury to explain what it meant by 'indirect participation.' The jury responded, 'Can a person be found guilty of murder by being a participant in the crime but not actually the person who pulls the trigger?'

"In a discussion held out of the jury's presence, and not reported in the record, both counsel agreed that the case had not been tried on an accomplice theory. Accordingly, neither party wished to have the trial court instruct the jury on the liability of an aider and abettor. In addition, the court noted 'a certain amount of unfairness as far as giving them [CALJIC instructions 8.27 and 8.80] without counsel having the

3

opportunity to discuss them with the jury.'  Accordingly, the court answered the jury's question by telling them:  'You have at the present time all of the instructions that are applicable to the case.  Those are the instructions by which you are to be governed.' " (*Lua*, *supra*, C002681, pp. 4-5.)

"The following day, the jury asked the court to re-read, among other parts of the record, the portion of the prosecutor's opening statement 'in which he states what he plans to prove in this case.'  In that statement, the prosecutor twice briefly said that the People will attempt to prove 'that defendant, Mr. Simon Lua in this case, killed <u>or assisted in</u> the killing of Al Borth.'  (Emphasis added.)  The trial court complied with the jury's request after admonishing them that 'the statements of the attorneys, including the opening statement, are not evidence and are not to be considered . . . as evidence.' " (*Lua*, *supra*, C002681, p. 5, fn. 1.)  "Two days later the jury found the defendant guilty of two counts of first degree murder and found true both the felony-murder and multiple murder special circumstances." (*Lua*, p. 5.)

II

*Defendant's Petitions For Resentencing*

A

*Legal Background*

Senate Bill No. 1437 (2017-2018 Reg. Sess.), which became effective on January 1, 2019, was enacted to "amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).)  The legislation accomplished this by amending sections 188 and 189 and adding section 1170.95 to the Penal Code.

Section 188, subdivision (a)(3), which defines malice, now provides in part: "Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a

4

principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." Section 189, subdivision (e) now limits the circumstances under which a person may be convicted of felony murder: "A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) [defining first degree murder] in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."

Senate Bill No. 1437 also added section 1170.95, which allows those "convicted of felony murder or murder under a natural and probable consequences theory [to] file a petition with the court that sentenced the petitioner to have the petitioner's murder conviction vacated and to be resentenced on any remaining counts when all of the following conditions apply: [¶] (1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine. [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial . . . . [¶] (3) The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (a).)

As relevant here, once a complete petition is filed, "The court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section. If the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner. The prosecutor shall file and serve a response within 60 days of service of the petition and the petitioner may file and serve a reply within 30 days after the prosecutor response is served. . . . If the petitioner makes a

5

prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause." (§ 1170.95, subd. (c).)

B

*The Superior Court's Denial Of The Petitions*

On October 17, 2019, defendant filed a pro. per. form petition requesting resentencing under section 1170.95. On the form, defendant declared via a checked box that he had been charged with felony murder or murder under the natural and probable consequences theory and had been convicted of first degree murder pursuant to those theories. Defendant further declared he could not now be convicted of first degree murder because of changes made to sections 188 and 189. He attested that he was not the actual killer, but failed to check the box on the petition form which stated, "I did not, with the intent to kill, aid, abet, counsel, command, induce, solicit, request, or assist the actual killer in the commission of the murder in the first degree."

Attached to defendant's form petition were numerous materials, including documents stating defendant had been found guilty of two counts of first degree murder, with special circumstance allegations under section 190.2, subdivision (a)(3) and 190.2, subdivision (a)(17), and was serving a sentence of life without the possibility of parole. While some of these materials were drafted by defendant and somewhat difficult to understand, we believe defendant suggested his special circumstance findings did not necessarily disqualify him from relief and sought discovery of certain documents in his record, including the jury instructions. Also included among the materials submitted in support of defendant's petition were a probation report wherein defendant proclaimed his absolute innocence, a memorandum to defendant's defense file noting defendant had stated he received the ammunition from two unnamed people prior to the murders, a letter stating defendant's belief he was convicted based upon partial fingerprints, and portions of the reporter's transcript from trial showing the parties intended to instruct the jury on

6

murder with malice aforethought and first degree felony murder occurring during a burglary.

Defendant further submitted his undated and unsigned declaration that stated another individual wished to burglarize the victims' home, and in order to help him, defendant went to see if the victims were home. When Al Borth answered the door, defendant asked to and did use the telephone. Defendant learned later the Borths had been killed and believed it was the other individual who killed them. He did not tell authorities about this man because the man had threatened his family. The guns he had for sale he had had for some time. Defendant denied killing anyone.

On November 22, 2019, the superior court summarily denied his petition in an ex parted minute order, which checked a box stating, "The Petitioner has not made a prima facie showing." No further explanation was provided. Defendant then filed a writ petition challenging the trial court's denial of his resentencing request, which the trial court treated as a subsequent petition for resentencing and summarily denied. Defendant timely appealed these denials.

                              DISCUSSION

Defendant contends the court's summary denial was prejudicially erroneous because he fulfilled the statutory requirements by stating a prima facie case for relief, thus entitling him to the appointment of counsel and briefing on his eligibility. We disagree.

Section 1170.95, subdivision (c) requires the trial court to make two separate prima facie determinations: one before appointing counsel and receiving briefing, and one after those procedural steps have been taken. (*Verdugo*, *supra*, 44 Cal.App.5th at pp. 327-329, review granted; *Lewis*, *supra*, 43 Cal.App.5th at p. 1137, review granted.)

"The first sentence of section 1170.95, subdivision (c), directs the court to review the petition and determine if the petitioner has made the requisite prima facie showing. The second sentence provides, if the petitioner has requested counsel, the court must

                                  7

appoint counsel to represent him or her. The third sentence requires the prosecutor to file and serve a response to the petition within 60 days of service of the petition and permits the petitioner to file a reply to the response. The structure and grammar of this subdivision indicate the Legislature intended to create a chronological sequence: first, a prima facie showing; thereafter, appointment of counsel for petitioner; then, briefing by the parties. ([*Lewis*], *supra*, 43 Cal.App.5th at pp. 1139-1140 [review granted] ['[w]hen the statutory framework is, overall, chronological, courts will construe the timing of particular acts in relation to other acts according to their location within the statute; that is, actions described in the statute occur in the order they appear in the text']; [Citations.]" (*Verdugo*, *supra*, 44 Cal.App.5th at p. 332, review granted.)

The trial court's review of the record of conviction as part of reviewing defendant's initial prima facie showing is fully contemplated by section 1170.95, subdivision (c) (*Verdugo*, *supra*, 44 Cal.App.5th at pp. 329-330, review granted) and is grounded in sound policy (see, e.g., *Lewis*, *supra*, 43 Cal.App.5th 1128, 1138-1139, review granted [it would be a "gross misuse of judicial resources" to issue an order to show cause or appoint counsel where a review of the court record established ineligibility as a matter of law]).

If following the initial prima facie review, the trial court concludes that the petitioner has not made a prima facie showing that he or she "falls within the provisions of" section 1170.95, the trial court may summarily deny the petition without first appointing counsel or holding a hearing.

Here, the trial court summarily denied defendant's two petitions for resentencing by checking a box that indicated, "The Petitioner has not made a prima facie showing." It is incumbent upon defendant to affirmatively demonstrate this was error. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 [judgments and orders are presumed correct, and all intendments and presumptions are indulged to support them on matters as to which the record is silent]; *People v. Thomas* (2011) 52 Cal.4th 336, 361 [absent

evidence to the contrary, "we presume that the court 'knows and applies the correct statutory and case law' "].)  However, he has not done so.

Our review of the record discloses that defendant's petition failed to state a prima facie case for relief and that the record of conviction shows he was ineligible for relief as a matter of law.  First, the materials defendant included with his petition showed he had been convicted of first degree murder with a burglary felony-murder special circumstance.  Thus, a review of defendant's petition and supporting materials alone justified the court's denial of his petition.  Second, the record of conviction supports the superior court's finding of ineligibility.  The People's information charged defendant with two counts of premeditated murder (§ 187) with special allegations that he had committed multiple murders (§ 190.2, subd. (a)(3)) while engaged in the commission of a burglary (§ 190.2, subd. (a)(17)).  The jury found him guilty of these murders and determined the special circumstances were true.

As was noted in this court's previous appellate opinion,[3] the parties agreed there was no evidence presented at trial that the murders were committed by anyone but

---

[3]     Defendant challenges the "adequacy" of any reliance on the record of conviction, asserting a full review of the trial transcripts must be made.  Defendant also challenges any use of the facts contained within the appellate decision in order to evaluate defendant's eligibility for resentencing.  However, defendant does not challenge that the former appellate opinion is part of the record of conviction, nor does he provide authority establishing that it cannot be used when considering his petition for resentencing.  Rather, statements made in prior appellate opinions are admissible as reliable hearsay when considering a resentencing petition (see *People v. Guilford* (2014) 228 Cal.App.4th 651, 654, 660 [Proposition 36 proceedings]) and have been used by numerous courts in evaluating a defendant's section 1170.95 prima facie showing (see, e.g., *Lewis*, *supra*, 43 Cal.App.5th at p. 1136, fn. 7, review granted; *Verdugo*, *supra*, 44 Cal.App.5th at p. 333, review granted; *People v. Tarkington* (2020) 49 Cal.App.5th 892, 909; *People v. Torres* (2020) 46 Cal.App.5th 1168, 1178, review granted June 24, 2020, S262011; *People v. Cornelius* (2020) 44 Cal.App.5th 54, 58, review granted Mar. 18, 2020, S260410).  As defendant did not file a petition for rehearing challenging the facts as stated in our previous opinion, we may presume those facts were a reasonable summary

9

defendant and that the case was not tried under an accomplice theory. (*Lua*, *supra*, C002681, pp. 5, 16-17.) Therefore, the court did not instruct the jury on accomplice liability even though the jury asked whether it could find defendant guilty without actually determining that he pulled the trigger. (*Lua*, pp. 5, 17.) As such, when the jury found defendant guilty and the special circumstances true, the jury necessarily accepted the evidence that defendant was the actual killer and determined he had "<u>committed</u> or <u>attempted to commit</u> a burglary" and "<u>intended</u> to kill" the victims.[4] (*Lua*, pp. 17, 24.) This renders defendant ineligible for relief because he fails to satisfy the requirements of section 1170.95, subdivision (a)(3) as a matter of law. (See §§ 189, subd. (e), 1170.95, subd. (a)(3).)

To the extent defendant is arguing he is eligible for relief because he was not the actual killer and/or did not act with the intent to kill during the course of the burglary, despite failing to check the box declaring that basis for the petition, the arguments are foreclosed by the jury's determinations. (See *Lewis*, *supra*, 43 Cal.App.5th at pp. 1138-1139, review granted [the jury's direct finding contradicted and controlled defendant's asserted eligibility for relief]; *People v. Allison* (2020) 55 Cal.App.5th 449, 461-462 ["If

---

of the evidence against him. (See *Guilford*, at pp. 660-661 [a defendant who believes there is a materially inaccurate description of facts in an appellate opinion may move for rehearing to correct those inaccuracies].)

**4**     The trial court instructed that in order to find defendant guilty of the felony-murder special circumstance under section 190.2, subdivision (a)(17), the jury had to determine: " 'that the murder was committed while <u>the defendant</u> was engaged in the commission or attempted commission of a burglary; [¶] [t]hat the murder was committed during the immediate flight after the commission or attempted commission of a burglary by <u>the defendant</u>; [¶] [t]hat <u>the defendant</u> intended to kill a human being; [*and*] [¶] [t]hat the murder was committed in order to carry out or advance the commission of the crime of burglary or to facilitate escape therefrom or to avoid detection.' . . . '[t]he special circumstances referred to in these instructions is not established if the burglary or attempted burglary was merely incidental to the commission of the murder.' " (*Lua*, *supra*, C002681, p. 23 (italics added).)

the prior finding shows the petitioner meets the requirements for murder liability under amended sections 188 and 189, then it is not true that the petitioner could not be convicted of murder *because of the changes to sections 188 and 189*, and the petition must be denied"].) If defendant wishes to challenge the implications arising from the jury's section 190.2, subdivision (a)(17) finding, he must first do so in a petition for habeas corpus.[5] (See *People v. Galvan* (2020) 52 Cal.App.5th 1134, 1141-1142; *Allison*, at p. 459, fn. 9.)

Having concluded defendant failed to state a prima facie case for relief as a matter of law, the trial court did not err in failing to appoint counsel. (See *Verdugo*, *supra*, 44 Cal.App.5th at p. 320, review granted [where defendant fails to state a prima facie claim for relief under § 1170.95, the court does not err in failing to appoint counsel]; *People v. Cornelius*, *supra*, 44 Cal.App.5th at p. 58, review granted [court did not err in failing to appoint counsel for defendant "indisputably ineligible for relief" under § 1170.95].)

### DISPOSITION

The judgment is affirmed.

/s/_____
Robie, Acting P. J.

We concur:

/s/_____
Hoch, J.

/s/_____
Krause, J.

---

[5] In light of this determination, we do not reach the People's arguments regarding the applicability of the California Supreme Court's decisions in *People v. Banks* (2015) 61 Cal.4th 788 and *People v. Clark* (2016) 63 Cal.4th 522, to defendant's judgment from 1987.